**James E. BRAY, Appellant,**

v.

**Maria Pults McNEELY, Appellee.**

**No. 01–84–00313–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 8, 1984.
Rehearing Denied Dec. 20, 1984.

---

2.  In view of our affirmation, we find it unnecessary to consider GRC's first reply point, regarding *TEX.R.CIV.PRO. 418(d)*.

Michael A. Pohl, Gilpin, Maynard, Parsons, Pohl & Bennett, Wanda L. McKee, Gilpin, Maynard, Parsons, Pohl & Bennett, Houston, for appellant.

Frederick P. Forlano, Finger, Burg, Cohen & Forlano, Houston, for appellee.

Before EVANS, C.J., and COHEN and WARREN, JJ.

1. Ch. 274, sec. 2, 1967 Tex.Gen.Laws 610, *amended by* Ch. 281, sec. 1, 1979 Tex.Gen.Laws 604.

## OPINION

COHEN, Justice.

James Bray originally filed two causes of action against Maria Pults McNeely and others who were subsequently dismissed from the suit. The first lawsuit was for breach of contract in the amount of $55,000. The second was to recover an additional $20,000. These two actions were consolidated and tried together. McNeely counterclaimed, asserting that both transactions were usurious loans. The jury found for Bray on all issues.

The trial court then granted McNeely's motion for judgment non obstante veredicto, finding, as a matter of law, that the two transactions were loans and that the additional monies owed constituted interest greater than twice the amount authorized by law. Tex.Rev.Civ.Stat.Ann. art. 5069, sec. 1.06.[1] Consequently, the court entered a judgment disregarding the jury verdict, ordering that Bray take nothing, forfeiting all principal and interest claimed by Bray, assessing a $17,000 penalty against Bray, equal to twice the interest charged, and awarding McNeely attorney's fees of $19,000, subject to credits if Bray did not appeal.

Appeal is taken only from the judgment non obstante veredicto as to the $55,000 transaction. No challenge is made to the trial court's action in forfeiting all principal and interest on the $20,000 transaction, and in assessing penalties, attorney's fees and costs in that transaction.

Relying on the advice of friends who knew McNeely, James Bray, a retired civil engineer, decided to invest with McNeely, who was in the real estate business. Bray initially loaned McNeely $20,000.00. One week later, on August 15, 1978, Bray entered into a second transaction with McNeely. Unlike the $20,000 loan, this transaction involved a specific piece of property, a 6.5 acre tract in Pasadena. McNeely wanted Bray to purchase a one-

half interest in the property for $50,000. Bray agreed to the deal provided that he retain an option to require McNeely to repurchase his interest in the property if she was unable to sell it by October 15, 1978. The repurchase price was $55,000. Two documents were executed in accordance with the agreement.

The property was not sold by October 15, 1978, and Bray exercised his option and demanded payment, which McNeely refused.

The special issues regarding the $55,000 transaction were:

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the $50,000.00 was a loan or an investment?

Answer either "It was a loan" or "It was an investment."

ANSWER: *Investment.*

If you have answered Special Issue No. 4 "It was an investment," then answer Special Issue No. 5; otherwise, do not answer Special Issue No. 5.

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the agreement entered into between James E. Bray and Maria Pults was that James E. Bray properly exercised, pursuant to their agreement, an option to sell his investment for $55,-000.00?

Answer "We do" or "We do not."

ANSWER: *We do.*

■ Bray argues that the trial court erred in granting judgment non obstante veredicto and in finding that the transaction was a loan, and a usurious loan, as a matter of law. This court cannot sustain the action of the trial court unless it concludes that there was no evidence to support the jury's verdict. *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726, 728 (Tex. 1982). In making such a determination, we must consider the evidence and inferences from it in the light most favorable to the appellant, and we must ignore all evidence

and inferences to the contrary. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982).

■ This court is presented with one question: Is this a usurious loan as a matter of law? The essential elements of usury are well established. They are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Id.* at 696.

To determine whether this transaction should be classified as a loan or a sale, we must look to the intention of the parties as revealed by the contract and the surrounding circumstances. *Rinyu v. Teal,* 593 S.W.2d 759, 761 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). In our case, the contract between the parties on its face discloses the purchase of an interest in property by Bray. Plaintiff's Exhibit 5 is a letter addressed to Bray signed by McNeely which begins:

Re: *Your purchase of a one-half (½) interest in and to that certain 6.521 acre tract* out of and a part of Lot 2, South Houston Gardens No. 2, according to the Map recorded in Volume 3, Page 2, Map Records of Harris County, Texas, and being in the H.C. Burnett Survey, Harris County, Texas.

The letter continues as follows:

This letter will acknowledge our agreement, that in return for the sum of $50,-000.00 paid to the undersigned, the receipt and sufficiency of which is hereby acknowledged, and your further agreement to pay one-half (½) of the principal, interest, taxes and other expenses connected with the ownership, and sale of the property described and attached hereto as Exhibit "A", which Exhibit "A" contains a metes and bounds description of the subject property, *I have this date, agreed to give you a one-half (½) undivided interest in and to the subject property.*

The title will remain in the name of Maria Pults, Trustee, but provided you pay your share as above provided, this letter

will evidence that *I am holding a one-half (½) undivided interest in and to the subject property as Trustee for you, and upon sale of said property, you will receive one-half (½) of the net sale proceeds.*

Your [sic] further agree that provided we sell the subject property at a profit, that *I have full rights and control over marketing, management and sale of the property.* (all emphasis supplied)

■ Although the date on the letter, December 17, 1977, is clearly erroneous according to both parties, the letter is probative evidence of the sale of an interest in property. The letter makes no reference at all to any repayment by McNeely. It clearly identifies the property, it contains the names of both grantor and grantee, it is signed by the grantor, and it contains words, albeit limited, of a conveyance in trust.

■ McNeely argues that this court must look to the substance of the agreement rather than its form. She contends that we must look at the attendant circumstances, reflected in the testimony of the parties, as well as the documents. Relying upon *Markwardt v. Harrell*, 430 S.W.2d 1, 4 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.), she argues that Bray himself admitted at trial that the transaction was a loan, and that, consequently, he is bound by his admissions. However, much of the testimony brought to the attention of the court refers to the $20,000 transaction which is not at issue in this appeal. The testimony regarding the $50,000 transaction is ambiguous at best, as exemplified by the following:

Q.: Isn't it true that the agreement that you had with Maria Pults was that you were to give her a fixed sum of money which she was supposed to repay back to you with an additional sum of money at a certain date and time?

A.: Yes, sir. She was investing that money and I would be repaid it from her profits on her investments.

Q.: And I take it your answer is "yes"?

A.: Yes, sir.

Q.: And at the time when the monies were due you, you had an absolute right to that, is that not correct?

A.: I think so.

Q.: Your answer is "yes"?

A.: I think so.

Q.: "Yes, I think so."?

A.: Yes, sir.

Q.: Would the $50,000.00 loan she was supposed to repay in two months, she had an absolute obligation to you to pay that $50,000.00 back, didn't she?

A.: That was only one of the options.

Q.: The option she exercised, sir?

A.: Yes, sir.

Q.: Based on the option that you exercised, she had an absolute obligation to pay that on October 15, 1978?

A.: Yes, sir.

Q.: And at that time, she also had an absolute obligation to pay you an additional $5,000.00?

A.: Yes, sir.

Certainly, Bray cannot be said to have testified "clearly and positively to facts which defeat his right to recover" as the plaintiff did in *Markwardt*, 430 S.W.2d at 4. *See also Delta Enterprises v. Gage*, 555 S.W.2d 555 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.), which held that payments labeled "interest" in documents were not interest and the transaction was not a loan; and *Gonzales County Savings & Loan Association v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976).

■ Regardless of what the parties chose to call the transactions at the time of trial, the documents they signed are still probative evidence of a sale of property. In a recent usury case, the Supreme Court of Texas held, "Though oral testimony may rebut the presumption that the instruments are what they appear to be, the instruments still remain evidentiary facts which will support any inference properly drawn therefrom, and still present a question for the trier of facts." *Holley v. Watts*, 629 S.W.2d at 697.

■ Not only was there documentary evidence that the transaction constituted a sale of an interest in property rather than a loan, there was also evidence that there was no absolute obligation to repay the $50,000. The evidence, both documentary and testimonial, reveals that McNeely had a contingent obligation to repurchase Bray's interest in the property after October 15, 1978, for $55,000, if Bray exercised his option to sell. The option was set out in a handwritten document dated August 15, 1978, which read:

RE: *Purchase of one-half (½) interest in and to that certain 6.521 acre tract out of Lot 2, South Houston Gardens No. 2 according to the Map recorded in Vol. 3 Page 2, Map Records of Harris County, Texas.*

MARIA PULTS AGREES TO PAY payment due September 9, 1978, and has paid all previous payments on $350,-000.00 Note dated December 9, 1977. If this property is not sold by October 15, 1978, MARIA PULTS agree to pay JAMES E. BRAY the sum of $55,000.00 plus any other expense incurred by JAMES E. BRAY in connection with this property including one-half (½) of payment to be made on October 9, 1978, at option of JAMES E. BRAY. (all emphasis supplied).

McNeely argues that because Bray exercised his option, the transaction necessarily constituted a loan. This overlooks the fact that during the period from August 15, 1978 until October 15, 1978, McNeely had control over the property and could have sold it. She could have prevented Bray's exercise of the option by selling the property and paying Bray one-half of the proceeds.

McNeely relies on Bray's testimony that, once he exercised the option, McNeely had an absolute obligation to pay Bray. This is true; however, in this case, McNeely was not obligated to pay until Bray exercised the option. There was only a contingent obligation at the time the contract was formed.

■ A contract does not become usurious just because it contains a contingent obligation, such as a repurchase option. In *Rinyu*, 593 S.W.2d at 759, the grantors had difficulty in meeting mortgage payments, so they sold their property to the grantee who leased the property back to them for a six-month term. The grantee gave them a six-month option of repurchasing the property for $1500 over the purchase price, an otherwise usurious amount. The Fourteenth Court of Appeals held that since the grantee could not force the grantors to exercise the option, there was no absolute obligation to repay, and, therefore, the transaction was not a usurious loan. In *Beavers v. Taylor*, 434 S.W.2d 230 (Tex. Civ.App.—Waco 1968, writ ref'd n.r.e.), the allegedly usurious interest due on a note was actually payment of a percentage of the debtor's gross sales. The court held that the payments were a contingent obligation, since if there had been no gross sales by the company, there would have been no payment. The fact that the contingent payments exceeded the lawful interest rate did not render the otherwise legal contract a usurious loan as a matter of law. *Id.* at 232. *See also Delta Enterprises*, 555 S.W.2d 555; *Korth v. Tumlinson*, 73 S.W.2d 1048 (Tex.Civ.App.—San Antonio 1934, no writ).

■ The transaction before us is similar. McNeely was not absolutely obligated to pay Bray $55,000 or any other amount. Payment was contingent upon either sale of the land or exercise of the option. If the land had been sold, either before or after October 15, 1978, the amount due Bray was uncertain. If the land was not sold, and if Bray did not exercise the option, nothing was due from McNeely. The fact that Bray did exercise the option does not make the contract a usurious loan as a matter of law.

■ In two additional points of error, Bray argues that special issue number five should be disregarded. Special issue five posed the following question:

Do you find from a preponderance of the evidence that the partial agreement gave

Mr. Bray an option to resell his investment prior to October 15, 1978, that Mr. Bray did elect to sell his investment, and is entitled to have his $50,000.00 refunded?

There was no evidence that Bray had an option to sell *prior* to October 15, 1978, nor was there any evidence that Bray was entitled to $50,000. As special issue six correctly reflects, he was entitled to $55,000. Since there was no evidence to support the submission of the special issue, the jury's answer to that issue was immaterial and should not have affected the trial court's judgment. That issue should be disregarded.

The controlling issue in this case was number six which asked:

Do you find from a preponderance of the evidence that the agreement entered into between James E. Bray and Maria Pults was that James E. Bray properly exercised, pursuant to their agreement, an option to sell his investment for $55,000.00?

ANSWER: We do.

That issue is supported by evidence, and in answering that issue, the jury found for Bray.

 We conclude that the trial court erred in granting the judgment non obstante veredicto and in finding, as a matter of law, that the $55,000 transaction was a loan with a usurious rate of interest.

The judgment of the trial court is reversed. Judgment is rendered that James E. Bray have and recover from Maria Pults McNeely the sum of $55,000, plus pre-judgment interest thereon at the legal rate from October 16, 1978, until February 20, 1984, the date of the district court's judgment, and post judgment interest on that amount from February 20, 1984, until paid.

The cause is remanded to the trial court for a determination of reasonable attorney's fees for Bray's attorney in successfully prosecuting the $55,000 claim, without any portion being awarded for Bray's attorney's fees related to the $20,000 claim.

The above judgment against McNeely shall be credited with $7000, being twice the amount of the usurious interest Bray charged on the $20,000 transaction (2 x $3500), plus post-judgment interest thereon at the legal rate from the date of the district court's judgment, February 20, 1984.

The cause is remanded to the trial court for a determination of a reasonable attorney's fee for McNeely's attorney in successfully prosecuting the usury cause of action on the $20,000 transaction, without consideration of services rendered in connection with the $55,000 claim. The sum so determined as attorney's fees, plus legal interest thereon from February 20, 1984, shall be an additional credit on the judgment in McNeely's favor.

Costs in the trial court are assessed ½ against Bray and ½ against McNeely. Costs in this court are assessed against McNeely.