BOYD v LAYHER

Docket No. 99910. Submitted March 15, 1988, at Lansing. Decided July 18, 1988.

Diane C. Boyd sold real property to Jerry and Sylvia Barth on a land contract in 1982. On December 7, 1983, with the land contract balance at $30,539.32 and interest at 9½ percent annually, Boyd entered into a written agreement with Ava Nelle J. Layher, which provided for the payment of $8,800 by Layher to Boyd in exchange for Boyd's assignment of her interest in the land contract to Layher, a quitclaim deed of the property to Layher, and the payment to Layher of the Barths' $350 monthly payments on the land contract from January 17, 1984, until April 17, 1987, for a total of $14,000 over forty months. Under the terms of the agreement, if Layher received all forty payments, she was to reassign the land contract and quitclaim the property to Boyd. If the Barths defaulted, Boyd could either receive from Layher $5,200 less any taxes due and terminate her interest in the property or pay all payments missed by the Barths in a lump sum and continue paying the monthly payments and get the property back. In 1986, after Layher had received thirty monthly payments for a total of $10,500, Boyd brought an action in the Jackson Circuit Court against Layher, seeking equitable relief from the agreement. Following a bench trial, the court, Russell E. Noble, J., found that the transaction was a loan at a usurious rate of interest and ordered defendant to repay plaintiff any amount collected in excess of principal plus five percent annual interest, to reassign her interest in the land contract back to plaintiff, and to convey the property back to plaintiff. Defendant appealed.

The Court of Appeals *held:*

The purpose of the law of usury is to protect the necessitous borrower from extortion and to accomplish this purpose a court must look at the real nature and substance of a transaction,

REFERENCES

Am Jur 2d, Interest and Usury §§ 8, 111, 112, 122 *et seq.*

Validity and construction of provision (escelator clause) in land contract or mortgage that rate of interest payable shall increase if legal rate is raised. 60 ALR3d 473.

not at its form or color. Here, an examination of all the facts and circumstances reveals that the parties' transaction was a loan at a usurious rate of interest rather than a sale of the land contract or a part of the land contract.

Affirmed.

1. Usury — Substance of Transaction.

The purpose of the law of usury is to protect the necessitous borrower from extortion and to accomplish this purpose a court must look at the real nature and substance of a transaction, not at its form or color.

2. Usury — Statutes.

An agreement providing for the advancement of funds at a rate of interest in excess of that permitted by statute in exchange for an individual's assignment of his interest in a land contract, a quitclaim deed to the property which is the subject of the land contract, a stream of payments due under the land contract, and providing for the subsequent reassignment of the land contract to the individual at the expiration of the agreement and a reconveyance of the property to the individual, establishes the relation of borrower and lender, and not that of seller and purchaser of part of the land contract; such a transaction would be usurious (MCL 438.31; MSA 19.15[1]).

*Brian E. Thiede,* for plaintiff.

*Best, Schmucker, Heyns & Klaeren, P.C.* (by *Chad C. Schmucker*), for defendant.

Before: Gʀɪʙʙs, P.J., and Bᴇᴀsʟᴇʏ and G. A. Dʀᴀɪɴ,* JJ.

G. A. Dʀᴀɪɴ, J. Defendant appeals from a decision rendered by the circuit court after a bench trial on October 16, 1986. The trial court found that the parties' transaction was a loan, rather than a sale of interest in a land contract, which was the primary issue at trial, and that defendant had received usurious loan interest from plaintiff contrary to MCL 438.31; MSA 19.15(1). On March

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

30, 1987, the lower court issued a judgment order-
ing defendant first to repay plaintiff any amount
that she had collected in excess of the principal
plus five percent per annum interest, second, to
reassign her interest in the land contract back to
plaintiff, and lastly, to convey the property back to
plaintiff. We affirm.

At trial plaintiff testified that on June 17, 1982,
she sold property on a land contract to Jerry and
Sylvia Barth. Plaintiff needed to borrow money to
pay her bills so that she and her two handicapped
children could continue to live in their house. She
read an advertisement in the *Brooklyn Exponent*
which indicated to her that defendant and her
husband, Frank Layher, would lend money on
land contracts or buy them. Plaintiff contacted
Frank Layher, but did not meet defendant until
December 7, 1983, the closing date.

Plaintiff further testified that she told Frank
Layher that she needed to borrow money and that
she had a piece of property that she could use as
collateral. Frank Layher told plaintiff that he was
not interested in buying her land contract but
would like to lend money on it. Frank Layher gave
plaintiff the understanding that she was entering
into a loan, but she could not specifically recall the
words he used. She stated that he never said
"borrower" or "lend." It was plaintiff's under-
standing that she was getting a loan because, as
she explained to Frank Layher, she needed to
borrow money against the land contract.

As to the closing on the transaction that oc-
curred on December 7, 1983, plaintiff further testi-
fied that defendant gave her an $8,800 check.
There, for the first time, plaintiff saw a document
entitled "agreement of sale and assignment of
seller's interest in land contract," which she spent
five or ten minutes reading. Plaintiff then assigned

her interest in the land contract to defendant and quitclaimed the property to defendant. Plaintiff stated she was in a hurry to get the money and did not pay attention to the documents. Plaintiff did not understand various sections of the agreement nor how much interest she would be paying to defendant. The agreement provided for defendant to collect forty monthly payments of $350 ($14,000) from January 17, 1984, until April 17, 1987. Plaintiff had not received any land contract payments since December 7, 1983.

Plaintiff further testified that she was willing to pay defendant the $8,800 principal plus five percent interest per year.

Defendant, a real estate broker, testified that she prepared the quitclaim deed and land contract assignment which were standard forms drawn by counsel, to which Frank Layher added calculations. Defendant characterized the agreement as plaintiff's sale of forty land contract payments to defendant. Plaintiff was required to assign her entire interest in the land contract to defendant and quitclaim the property to defendant. If defendant got all forty payments, then she would reassign the land contract and quitclaim the property to plaintiff. If the Barths defaulted, then plaintiff could elect option A, under which she would receive from defendant $5,200 less taxes due and terminate her interest in the property, or option B under which she would pay all the payments that the Barths missed, in a lump sum, continue paying the monthly payments and get the property back. Defendant received thirty monthly payments of $350 ($10,500) between December 7, 1983, and July, 1986.

This Court is asked to determine whether the lower court erred in deciding that the parties' transaction was a loan rather than a sale. The

defendant contends on appeal that the parties'
transaction was a sale, not a camouflaged usurious
loan transaction, subject to the usury statutes.

> "There is no need, at this late date in the law of
> usury (see Leviticus 25:35-37; Deuteronomy 23:19,
> 20; Saint Chrysostom's Fifth Homily on the Gospel
> of St. Matthew; CL 1948, § 438.52 [Stat Ann
> § 19.12]) to discuss its rationale. Suffice to say that
> its purpose is to protect the necessitous borrower
> from extortion. In the accomplishment of this
> purpose a court must look squarely at the real
> nature of the transaction, thus avoiding, so far as
> lies within its power, the betrayal of justice by the
> cloak of words, the contrivances of form, or the
> paper tigers of the crafty. We are interested not in
> form or color but in nature and substance." [*Cul-
> lins v Majic Mortgage, Inc,* 23 Mich App 251, 257;
> 178 NW2d 532 (1970), quoting *Wilcox v Moore,* 354
> Mich 499, 504; 93 NW2d 288 (1958).]

The case most on point is *Abeloff v Ohio Finance
Co,* 313 Mich 568; 21 NW2d 856 (1946), where our
Supreme Court had to determine whether the
transactions in question were loans or sales of
accounts. The *Abeloff* Court stated:

> At the outset, we are confronted with the re-
> quirement of examining the entire transaction.
> *Patterson v Albert,* 267 Mich 40 [255 NW 158
> (1934)]. It is elementary that in such an examina-
> tion we are not bound by the form of the transac-
> tion, and that, notwithstanding how it may be
> characterized by the parties in their written agree-
> ment, its real nature must be determined from all
> the facts and circumstances. [313 Mich 577.]

The *Abeloff* Court explained its determination
that the transactions were loans rather than sales:

> The agreements disclose a well planned course

of action, designed to circumvent the statutes for-
bidding the taking of interest in excess of seven
per cent. per annum, by the repeated characteriza-
tion of the transaction as sales of accounts.
Stripped, however, of all of its technical refine-
ments, the testimony clearly shows that the actual
relationship between the parties was that of bor-
rower and lender. The agreement provided for the
advancement of funds, secured by accounts, many
of which, because of their nature, were of doubtful
value, and the further protection of a lien on the
goods involved in such accounts, much of which
never left the possession of the seller until the
account was paid in full and the substitution of
new accounts for those which failed to ripen into
full payment. [313 Mich 577-578.]

Defendant claims that plaintiff sold her part of
plaintiff's land contract. This view is supported by
the agreement, a document which defendant sup-
plied and which repeatedly refers to the parties as
"seller" and "purchaser." Plaintiff only offered her
testimony about her understanding of the transac-
tion in support of her position. However, an exami-
nation of all the facts and circumstances reveals
that the lower court correctly viewed the parties'
transaction as a loan rather than a sale.

Defendant gave plaintiff $8,800 in exchange for
forty of plaintiff's $350 monthly land contract
payments ($14,000). Plaintiff assigned her interest
in a land contract to defendant and quitclaimed
the property to defendant so that defendant would
be assured of obtaining payment. The agreement
provided that defendant would reassign the land
contract and quitclaim all interest in the property
to plaintiff after she received the forty monthly
payments. Defendant claims that she bought part
of plaintiff's land contract. What defendant
"bought" was a stream of income, which the
Barths would have paid to plaintiff, but which
flowed to defendant because of the agreement. As
the "purchaser" of a greater sum of money to be

paid in the future, the defendant was not a purchaser at all, but a lender.

The defendant claims that plaintiff did not guarantee the Barths' payments. Defendant points out that if the Barths defaulted and defendant acquired the property, then plaintiff had two options. Under option A, defendant would purchase all of plaintiff's interest in the land contract and property for $5,200 minus any taxes that were due. Because $30,539.32 plus 9½ percent annual interest was due on the land contract when the parties entered into the agreement, and Frank Layher testified that the property was worth about $25,000, plaintiff's election of option A would be a financial disaster for her and a windfall for defendant. Plaintiff's only real choice would be option B, under which she would pay all the payments that the Barths owed defendant, together with attorney fees and costs, and would continue to make monthly payments until defendant received all forty payments. Defendant did not buy part of a land contract. She attempted to ensure that she would receive $14,000 for her $8,800 loan in the event of a default, by requiring plaintiff to make the Barths' payments or forfeit her valuable interest in the land contract and property.

We wholeheartedly agree with the circuit court's conclusion that "[l]anguage is not dispositive of the issue. If something walks like a duck, quacks like a duck and swims, covering it with chicken feathers will not make it into a chicken." Although secured loans can be made without violation of the usury statutes, and sales of parts of land contracts might be possible, here the parties entered into a usurious loan agreement for which plaintiff has properly obtained equitable relief.

We find that the other issues raised by the defendant are unmeritorious. Accordingly, the decision and judgment of the trial court are affirmed.