Kenneth R. CAUDLE v. CITY OF FAYETTEVILLE,
State of Arkansas

CR 93-608                                    866 S.W.2d 410

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Donald C. Donner*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Kenneth R. Caudle appeals a judgment by the circuit court finding him guilty of operating a pawn business in Fayetteville without a permit in violation of City Ordinance § 115.02(A). He was fined $500 and assessed costs of $67.75. He argues on appeal that the circuit court erred in its conclusion and in using civil cases to resolve a criminal matter. We affirm the judgment.

The facts are not in dispute. On April 9, 1992, William Brown and Cecil McFarland, both undercover police officers, entered The Swap Shop owned by Caudle. They were carrying a compact disc player. Officer Brown spoke with Caudle and told him that he "needed to pawn the CD player." Caudle looked the item over and said, "I will loan you twenty dollars on it." He then filled out a Bill of Sale with an option to repurchase showing McFarland and Brown as the sellers and had both men sign it. Under the agreement, the sellers had the right to repurchase the item within ten days. After the officers signed the agreement, Caudle gave them twenty dollars, and they left the shop. On April 15, 1992, Officer Brown returned to The Swap Shop and spoke to Caudle again. This time he stated that he wanted to pick up "an article that (he) had pawned" and gave Caudle the Bill of Sale and twenty-four dollars. Caudle returned the identical compact disc player to him. At this point, Brown showed Caudle his badge and asked if he had a city permit to operate a pawn business. Caudle replied that he did not need a permit. The officer then issued him a citation for conducting a pawn operation with-

out a city permit in violation of City Ordinance § 115.02(A). Caudle was tried in municipal court on the misdemeanor, found guilty, and assessed a fine of $300 and court costs of $33. He appealed the decision to circuit court where a bench trial was conducted.

Caudle testified before the circuit court that he decided to discontinue operating his pawn business in December of 1990 due to increased insurance costs associated with the business. He stated that he removed signs referring to a pawn operation and changed his paperwork to show that he no longer operated a pawn shop but a swap shop, the difference being that in the swap shop he purchased the personal property subject to the seller's right to repurchase. Caudle did not dispute Officer Brown's testimony that he told the officer that he would "loan him twenty dollars on the C.D. player." He also admitted that he did not correct Officer Brown when Brown said, "I pawned this C.D. player and I want to buy it back." Officer Brown further estimated that the value of the CD player was $100.

Additional proof was offered by the City. The words "THE PAWN SHOP" appeared at the time of the citation in large, bright yellow letters on the front of the building. One interior sign also read: "YOU MUST BE 18 YEARS OLD AND HAVE PROPER I.D. OR DRIVERS LICENSE TO PAWN MERCHANDISE." Finally, it was shown that Caudle had not changed an Alcohol, Tobacco and Firearms license issued to him as a pawnbroker. The circuit court found him guilty of conducting a pawn business without a license in violation of the city ordinance and fined him accordingly.

Caudle's primary contention on appeal is that the Bill of Sale with right to repurchase was a sale and not a bailment arrangement or pawn and that the agreement decides the issue of what the business was. We do not agree. We have held that in reviewing a business transaction, we will look to the reality of that transaction. *Peoples Loan & Investment Co.* v. *King, Adm.*, 220 Ark. 236, 247 S.W.2d 21 (1952). In *King*, the issue was whether a sale or mortgage of land was involved. We stated in our analysis:

> If there is an indebtedness or a liability between the parties, either a debt existing prior to the conveyance or a debt

arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of the existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instrument. On the contrary, if no such relation whatever of debtor and creditor is left subsisting, then the transaction is not a mortgage but a mere sale and contract of repurchase.

220 Ark. at 240-241, 247 S.W.2d at 23-24.

In the same vein, we stated in a case where we affirmed the trial court on the issue of whether a bill of sale was in actuality a usurious loan: "The law shells the covering, and extracts the kernel. Names amount to nothing when they fail to designate the facts. We are of the opinion that the court was justified in concluding that the papers called 'bill of sale' and sale tickets' were nothing more or less than a shift for a usurious loan of money." *Sparks* v. *Robinson*, 66 Ark. 460, 463-464 (1899). The facts here are clear. Outside signage declared that the business operation was a pawn shop. The officers and Caudle negotiated using terms such as "loan" and "pawn." The Alcohol, Tobacco and Firearm license identified Caudle as a pawnbroker. The value of the CD player was estimated to be $100, which was significantly more than the amount loaned.

The pertinent Fayetteville ordinances, § 115.01, *et seq.*, provide that no person shall operate a pawn business without a license. Penalties for doing so are included. In addition, *Black's Law Dictionary* 1015 (5th ed. 1979) defines a pawn as: "A bailment of goods to a creditor, as security for some debt or engagement; a pledge." The combined facts reveal that that is clearly what occurred in the instant case. Caudle was conducting a pawn operation while calling it something else. Under such circumstances we will look to the substance of the operation and of the transaction involved. *See McElroy* v. *Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). Here, substantial evidence not only exists to support the circuit court's decision, but it abounds.

■ Caudle posits as his second point that the circuit court erred in using an incorrect standard of proof for a criminal case. He directs us to language in the court's bench opinion in which it referred to a civil case involving a bill of sale — *Sleeper* v. *Sweetser*, 247 Ark. 477, 446 S.W.2d 228 (1969):

> [T]he Arkansas Supreme Court many years ago . . . looked at an almost identical transaction and concluded that it was nothing more than as I have indicated a ruse or a device to avoid having the transaction characterized as a loan of money and in that case at a usurious rate of interest.

We do not understand this comment by the circuit court to be an application of an erroneous standard of proof. There is nothing in this statement that remotely suggests that the circuit court was applying the civil burden of preponderance of the evidence to this case as opposed to beyond a reasonable doubt. Caudle's argument, therefore, must fail. Moreover, we concur with the circuit court that the facts in this case more than support a conclusion that the Bill of Sale was a ruse or device to avoid paying the higher insurance premiums required to operate his pawn business.

Affirmed.

GLAZE, J., concurs.