PEOPLE v LEE

Docket Nos. 96876, 96877. Argued November 1, 1994 (Calendar No. 5). Decided December 27, 1994.

Jeffrey W. Lee and David S. Miller, following preliminary examination in the 14B District Court, John B. Collins, J., were bound over for trial of violation of the usury statute, MCL 438.41; MSA 19.15(51). The Washtenaw Circuit Court, Patrick J. Conlin, J., denied the defendants' motion to quash the indictment. Subsequently, the defendants entered guilty pleas on the condition that they could appeal on the ground that because the complainant was under no obligation to repurchase a watch he had sold to the defendants, there was no loan and, thus, no violation of the statute. The Court of Appeals, DOCTOROFF, C.J., and SAWYER and MURPHY, JJ., affirmed in an unpublished memorandum opinion, finding that both parties manifested an intent to enter into a loan (Docket Nos. 149014, 149015). The defendants appeal.

In an opinion by Justice RILEY, joined by Justices LEVIN, BRICKLEY, and MALLETT, the Supreme Court *held:*

There was not probable cause to believe that a loan transaction occurred because the complainant was under no obligation to repurchase the watch; thus, there was not probable cause to support the defendants' bindover.

1. Usury is the receiving, securing, or taking a greater value for a loan or forbearance of money, goods, or things in action than is allowed by law. A loan gives rise to a legal obligation to repay, and if there is no obligation to repay, there is no loan, regardless of the name used for or applied to the transaction. In this case, the defendants gave $2,600 to the complainant in exchange for his Rolex watch, but at no point did they enter into any written agreement obligating him to return the money. The complainant simply had an option to repurchase his watch within thirty days.

2. The Supreme Court cannot create a loan where one does not exist, and, in this case, the real nature of the transaction was a sale, not a loan. Both the possession of and the title to the watch passed from the complainant to the defendants when the watch was physically exchanged for $2,600. At that moment, the defendants had dominion over the watch and as-

sumed any risk of loss or damage to it. Although the defendants agreed to sell the watch back to the complainant, a subsequent purchase was not certain; it was an option.

Reversed.

Chief Justice CAVANAGH, joined by Justices BOYLE and GRIFFIN, dissenting, stated that there was sufficient probable cause to support the bindover. The complainant testified that he had been offered considerably more for the watch than he received from the defendants and that he told the defendants that he did not want to sell it. He further testified that the defendants agreed to enter into a loan or pawn transaction, using a buy/sell arrangement, to avoid the legal requirements of pawn transactions.

CRIMINAL LAW — USURY — LOANS — SALES.

A sale of goods involving an option to repurchase, but no obligation to repay, is not a loan for purposes of the usury statute, regardless of the name used or applied to the transaction (MCL 438.41; MSA 19.15[51]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Brian L. Mackie,* Prosecuting Attorney, and *Marilyn A. Eisenbraun,* First Assistant Prosecuting Attorney, for the people.

*John R. Minock* and *Peter J. Kelly* for the defendants.

RILEY, J. In this case, we are called upon to determine whether there is probable cause to find that a loan occurred within the meaning of the usury statute, MCL 438.41; MSA 19.15(51), where a person purchases a used watch and grants the seller an option to later repurchase the watch at a significantly higher price. Specifically, we must decide whether there was probable cause to believe that defendants' act of exchanging $2,600 for a used Rolex and an option to repurchase the watch a month later for $3,250 plus four percent sales tax constitutes a loan. We conclude that there was not probable cause to believe that a loan transac-

tion occurred because complainant was under no obligation to repurchase the watch. Hence, there was not probable cause to support defendants' bindover.

I

On February 8, 1991, complainant Lonnie May was in need of $2,600 for rent and other personal expenses. He contacted various jewelry stores offering his Rolex watch as collateral in exchange for a short-term loan. However, every store refused the offer and instead offered to purchase his watch. Desiring a loan rather than a sale, May then contacted Dave's Diamonds and Gold. Defendant David S. Miller owned the store, and defendant Jeffrey Wayne Lee was his employee. Lee indicated that the store did not loan money, but would be willing to purchase May's watch for $2,600. If that was not acceptable, Lee indicated that the store would be willing to grant him an option to repurchase the watch in thirty days for $3,250 plus four percent sales tax. May agreed to the latter and entered into the transaction.

At the end of the thirty days, May did not have the money to redeem his watch, so he sent his son, Michael, to offer a $1,000 down payment on the option. Defendants refused the partial payment, but offered to extend the option for another thirty days in exchange for $625. Michael immediately telephoned May regarding this offer. May told Michael to simply take the money and leave the store.

The next day, March 9, 1991, May sent Michael back to the store with $625 in money orders. Defendant Miller, however, refused to accept these money orders and demanded cash. Michael again telephoned May who told him to exchange the

money orders for cash and pay for the extended option. Michael went across the street to the bank and cashed the money orders. He then sent his girl friend back to defendants' store with the $625 in cash.

Subsequently, May informed the police of this transaction, which prompted the prosecutor to charge defendants with violation of the usury laws, MCL 438.41; MSA 19.15(51).[1] On June 12, 1991, a preliminary examination was conducted before 14B District Court Judge John B. Collins. Thereafter, on August 28, 1991, Judge Collins heard arguments offered by the prosecution and defendants. In the end, Judge Collins found probable cause to bind defendants over for trial. He reasoned that there was sufficient evidence that the parties intended and entered into a loan agreement, rather than simply being involved in a sale.

The case proceeded to the Washtenaw Circuit Court, where defendants moved to quash the indictment. Defendants argued that May was under no obligation to repurchase the watch; hence, there was no loan, and defendants could not be charged with violating the usury laws. On November 27, 1991, Judge Conlin denied the motion to quash. Subsequently, defendants entered guilty pleas on the condition that they could appeal their motion to quash under MCR 6.301(C)(2). On January 30, 1992, defendant Miller was sentenced to two years probation, six hundred hours

---

[1] The prosecutor argued that the difference between the repurchase price—$3,250—and the original selling price—$2,600—was $650. The prosecutor contended that in the first month of the option, the interest assessment constituted a three hundred percent interest rate per year that was well beyond the twenty-five percent per year legally proscribed maximum. Although there may be some dispute over whether defendants could charge an interest rate of thirty-six percent per year under MCL 446.210; MSA 19.590 as licensed pawnbrokers, the dispute is irrelevant because defendants were accused of charging three hundred percent interest per year.

of community service, and a $3,000 fine. Defendant Lee was sentenced to one year probation.

On April 22, 1993, the Court of Appeals affirmed in an unpublished memorandum opinion (Docket Nos. 149014, 149015). In summary fashion, the Court adopted the lower court's reasoning that both parties manifested an intent to enter into a loan and therefore affirmed.

This Court granted defendants' application for leave to appeal on May 6, 1994.[2]

II

The law of usury is not a new concept in law. Indeed, it dates back as far as Biblical times. See *Wilcox v Moore,* 354 Mich 499, 504; 93 NW2d 288 (1958), citing Leviticus 25:35-37, Deuteronomy 23:19, 20, and Saint Chrysostom's Fifth Homily on the Gospel of St. Matthew. "Usury is, generally speaking, 'the receiving, securing, or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law.'" *Hillman's v Em 'N Al's,* 345 Mich 644, 651; 77 NW2d 96 (1956), citing 55 Am Jur, Usury, § 2, p 324.

Michigan has statutorily adopted this principle in MCL 438.41; MSA 19.15(51):

A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period. Any person guilty of criminal usury may be imprisoned for a term not to exceed 5 years or fined not more than $10,000.00, or both.

---

[2] 445 Mich 880.

As noted in *Wilcox, supra* at 504, "its purpose is to protect the necessitous borrower from extortion." In the instant case, we address one aspect of the usury statute, i.e., whether the transaction constitutes a loan within the meaning of the statute.[3]

### A

Construing the instant statute is no different from any other statute; we attempt to give effect to the intent of the Legislature as expressed in the statute.[4] *Dussia v Monroe Co Employees Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971). Where the "language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary." *Karl v Bryant Air Conditioning,* 416 Mich 558, 567; 331 NW2d 456 (1982) (citations omitted).

Only if the statute is of doubtful meaning or ambiguous, is "the door . . . open to a judicial determination of the legislative intent." *Knapp v Palmer,* 324 Mich 694, 700; 37 NW2d 679 (1949). See also *City of Lansing v Lansing Twp,* 356 Mich 641, 648-649; 97 NW2d 804 (1959). Nonetheless, simply because a word is undefined does not render the statute ambiguous; instead, undefined words are given meaning as "understood in common language, taking into consideration the text

---

[3] Because there is no allegation of any forbearance of a debt presented in this case, the pivotal word in this statute demanding interpretation is "loan."

[4] While penal statutes generally are strictly construed, *People v Gilbert,* 414 Mich 191, 211; 324 NW2d 834 (1982), MCL 750.2; MSA 28.192 attempts to modify the rule by providing that "[t]he rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law." Given our holding herein, we do not find this issue dispositive and thus express no opinion regarding this conflict.

and subject matter relative to which they are employed." See *Stocin v C R Wilson Body Co,* 205 Mich 1, 4; 171 NW 352 (1919).

In the instant case, the statute is clear and unambiguous but "loan" is not defined. Where a statute does not define one of its terms it is customary to look to the dictionary for a definition.[5] *The Random House Dictionary of the English Language: Second Edition Unabridged* defines a loan as:

> 1. the act of lending; a grant of the temporary use of something: the loan of a book. 2. something lent or furnished on condition of being returned, esp. a sum of money lent at interest . . . .

Lend is then defined as:

> 1. to grant the use of (something) on condition that it or its equivalent will be returned. 2. to give (money) on condition that it is returned and that interest is paid for its temporary use.

45 Am Jur 2d, Interest and Usury, § 117, p 102, similarly defines a loan as

> an advancement of money or other personal property under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced.

Review of these common definitions clearly indicate that a loan only occurs when there is an obligation to repay.

Courts construing the term "loan" have reached

---

[5] *Energetics v Whitmill,* 442 Mich 38; 497 NW2d 497 (1993).

similar conclusions. For example, in *Bankers Mortgage Co v Internal Revenue Comm'r,* 142 F2d 130, 131 (CA 5, 1944), the court noted that "[t]he word 'loan' implies an advance of money with an absolute promise to repay."

Similarly, in *United States for the use & benefit of First Nat'l Bank of Jackson v United States Fidelity & Guaranty.Co,* 240 F Supp 316, 322 (ND Okla, 1965), the court explained that "[a] loan, from one person or party to another, in law, raises a legal obligation to repay the same, and if there is no obligation to repay, then there is not a loan from a legal standpoint, regardless of the name used or applied to the transaction."

In the present case, defendants gave $2,600 to May in exchange for his Rolex watch, but at no point did they enter into any written agreement obligating May to return this money. May simply had an option to repurchase his watch within thirty days.

This choice was similar to the option that the plaintiff had in *Bray v McNeely,* 682 SW2d 615 (Tex App, 1984). In that case, McNeely had a large tract of property, and she agreed to sell a one-half interest in the plot to Bray for $50,000. This sale included an option that gave Bray the ability to force McNeely to buy the interest back from him for $55,000. This option was exercisable by Bray if, within two months, McNeely was not able to sell the entire parcel. At the end of the two-month period, the land had not been sold. Bray attempted to exercise his option to sell, but McNeely refused to buy the land back. Bray filed suit. McNeely argued that the option to buy back the land at a higher price created a usurious loan that she could not be legally bound to pay. The trial court found in her favor, but the Court of Appeals reversed. It found that "[a] contract does not become usurious

just because it contains a contingent obligation, such as a repurchase option." *Id.* at 619.

Although Bray possessed an option to force McNeely to repurchase the land, he was not required to exercise this option. Hence, his contract was not usurious. Similarly, May had an option to repurchase his watch, but he was under no obligation to do so.

### B

Nevertheless, the prosecution argues that regardless of this option, the real nature of this transaction was a loan. The prosecution relies on *Wilcox,* in which this Court stated:

> [L]ook squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance. [*Id.* at 504.]

In *Wilcox,* Moore entered into an agreement to purchase a home from John Stoppert. The cost of the home was $20,608.39. Moore put $100 down and subsequently transferred another $5,600 in payment; however, Moore needed financing help. Consequently, it was agreed that another party, Wilcox, would buy the house for $15,000 and sell it to Moore under a land contract for the price of $21,001.

Construing this transaction in light of the usury laws, this Court found:

> Here it is abundantly clear that what Mrs. Wilcox actually did, knowing (through her agent) of Moore's interest in the property and his necessities, was merely to lend to him the money to

complete his purchase, at a substantial (and illegal) bonus, taking the property as security therefor. It is immaterial that the device of purchase and sale was employed. It was actually a loan at usurious interest . . . . [*Id.* at 508.]

Although this Court found a loan in *Wilcox,* we are persuaded that this case is distinguishable on the basis of its facts. Unlike May, Moore had to sign a promissory note obligating him to pay the higher price for his home. It was this promissory note that created the loan by obligating Moore to repay Wilcox. No such promissory note existed in the instant case. This Court should look through a transaction so as to avoid the betrayal of justice, *but only "so far as lies within its power." Id.* at 504. This Court cannot create a loan where one simply does not exist.

Promissory notes creating an obligation to repay a loan are not uncommon. In *People v Breckenridge,* 81 Mich App 6, 14; 263 NW2d 922 (1978), the Court of Appeals found that promissory notes did create such a loan:

Whatever the parties may call it, the nature of the transaction between defendant and Amway strongly suggests a loan was made. Defendant was given money by Amway for his temporary use. Each time defendant obtained money from Amway, he promised to repay that money in 30 days. This was accomplished with a series of promissory notes. Defendant promised to (and did) pay interest; he also purported to give collateral for the money obtained by assigning stock.

Unlike *Wilcox* and *Breckenridge,* a promissory note obligating repayment is not present in the case at hand. Accordingly, *Wilcox* and *Breckenridge* are distinguishable. *Wilcox,* however, can offer some insight.

As this Court said in *Wilcox,* it is important to "look squarely at the real nature of the transaction . . . ." *Id.* at 504. Upon examination of May's transaction, we conclude that his arrangement with defendants was a sale and not a loan. MCL 440.2106(1); MSA 19.2106(1) defines a sale and provides that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price (section 2401)."

In this case, both the possession of and the title to the watch passed from May to defendants when May physically exchanged the watch for $2,600. At that moment, defendants had dominion over the watch and assumed any risk of loss or damage to it. This exchange created the sale because, under MCL 440.2401(2); MSA 19.2401(2), "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . ." Although defendants agreed to sell the watch back to May, this subsequent purchase was not certain. It was an option. If May chose to buy it back, the repurchase would be another sale requiring the payment of sales tax.

C

This conclusion is consistent with other courts that have found that such an arrangement creates a sale and not a loan. For example, in *Bankers Mortgage, supra* at 131, the court found:

> When the so-called borrower is not required to repay the loan, and where a lender must look to the property which the lender has authorized the borrower to take, and when the borrower may cancel the obligation at his option, the transaction is much more consistent with a sale than with a loan.

In *Bankers Mortgage,* the Humble Oil Company received two nonnegotiable notes from Bankers Mortgage Company for $300,000. These notes provided that Humble Oil would have the right to extract minerals from Bankers Mortgage's plot for thirty years or until the $300,000 had been recovered. At the end of the thirty-year period, Humble Oil would have the exclusive option to purchase Bankers Mortgage's interest in the land by excusing any of the debt and interest still owed. *Id.* at 131. In reality, however, Bankers Mortgage was never obligated to pay back this money. "In the event production on the land should cease before the said notes were liquidated, then the Oil Company, the alleged mortgagee, agreed to cancel the indebtedness." *Id.* The court found that this transaction and option did not create a loan, but instead created a sale of mineral rights.

Similarly, in *City Nat'l Bank Bldg v Helvering,* 68 App DC 344, 347; 98 F2d 216 (1938), the court found that City National Bank's conveyance of its building to Union Trust Company of Cleveland was a sale and not a loan. The court reached this conclusion even though City National immediately leased the building from Union Trust and was granted an option to repurchase on any rent-paying date:

> The word "loan" implies an obligation to repay. Petitioner, it is true, has the option to redeem and discharge the certificates, but it is only an option. If it elects never to exercise the option, the holders will continue in perpetuity their equitable ownership in the leased property. . . . In this view we can find no proper ground on which to treat the sale as a loan or the certificates as a debt.

May conveyed his Rolex watch to defendants for $2,600, just as City National and Bankers Mort-

[Dec

gage conveyed their property for value. Bankers Mortgage, City National, and May also had an option to redeem their property, at their discretion, for a price. These profound similarities lead to the inevitable conclusion that May's exchange of his watch to defendants for $2,600 was a sale and not a loan. Although *Bankers Mortgage* and *City Nat'l Bank Bldg* are civil cases requiring that a loan possess an absolute obligation to repay, it is hard to find that the definition of a loan should be expanded in the criminal context so as to include this transaction under its umbrella.

### III

In light of our holding that there was no probable cause that defendants loaned $2,600 to the complainant, and, hence, no probable cause to support a bindover, we do not find it necessary to consider defendants' alternative, void for vagueness theory.

### IV

We hold that there was no probable cause to support a bindover since there was no probable cause that a loan occurred. The judgment of the Court of Appeals is reversed.

LEVIN, BRICKLEY, and MALLETT, JJ., concurred with RILEY, J.

CAVANAGH, C.J. I respectfully dissent because my review of the record reveals sufficient probable cause to support bindover. The complainant testified that he had been offered up to five or six thousand dollars for the watch. He testified that he told the defendants that he did not want to sell

the watch. He testified further that the defendants agreed to enter into a loan or pawn transaction, and that the defendants told him that they would use a buy/sell arrangement to avoid the legal requirements of pawn transactions.[1] The district court found probable cause that the transaction was either a loan or a pawn, and that the transaction was usurious.

The trial judge, in denying the defendants' motion to quash, reasoned:

> This Court will follow the rules in *Wilcox*[2] and *Boyd*[3] and look beyond the form of the parties' transaction to determine the actual nature of the agreement. Certainly the transfer of possession and Defendants bearing the risk of loss are indicative of a sale. Also, the lack of an absolute obligation on the part of [the complainant] to repay the $2,600.00 principal is indicative of a sale. However, in the context of usurious arrangements, manifestations are subject to a greater scrutiny than the average transaction. *Wilcox* provides a court the means to look beyond the visible indications and disclose the actual nature of the underlying agreement.
>
> *      *      *
>
> In the instant case, [the complainant] testified that he was in financial difficulty and wished to

---

[1] The complainant testified:

They proceeded to explain to me that because of the nature of the law they couldn't write down that they loaned me the money. What they had to do was make a receipt saying that I sold them the watch and then put it in lay-a-way and was buying it back from them. And I said well, you know, I mean I got to trust you on this deal. And they said no, there is no problem. The fee is $650.00, you pay [for] your watch, what you borrow plus six hundred and fifty dollars and you get your watch back.

[2] *Wilcox v Moore,* 354 Mich 499; 93 NW2d 288 (1958).

[3] *Boyd v Layher,* 170 Mich App 93; 427 NW2d 593 (1988).

borrow against his Rolex watch. He stated he clearly opposed entering into a sale agreement with Defendants and on more than one occasion informed Defendants of that. He testified that he felt assured he was in fact borrowing against the watch and not selling it and that the Defendants arranged the transaction so that this could be done. If he desired to sell it, [the complainant] suggested he could have easily received more than twice the value of the watch by taking it elsewhere. Furthermore, [the complainant] understood that the personal property given up was to be security in case of a failure to repay. . . . [T]he District Court in the case at bar could properly conclude based on all the circumstances surrounding the transaction that the underlying agreement amounted not to a sale but either a loan or pawn.

Like the Court of Appeals,[4] I would adopt the reasoning of the trial court and would affirm.

BOYLE and GRIFFIN, JJ., concurred with CAVANAGH, C.J.

_____

[4] Unpublished memorandum opinion, issued April 22, 1993 (Docket Nos. 149014, 149015): "[W]e affirm for the reasons stated in the trial court's well reasoned opinion."