FOLANDS JEWELRY BROKERS, INC v CITY OF WARREN

Docket No. 167595. Submitted January 17, 1995, at Detroit. Decided April 28, 1995, at 9:15 A.M. Leave to appeal sought.

Folands Jewelry Brokers, Inc., brought an action in the Macomb Circuit Court against the City of Warren, seeking a declaration that its granting to certain of its customers the right to purchase an option to repurchase precious metals and gems that had been sold to the plaintiff did not constitute pawnbroking and subject the plaintiff to regulation as a pawnbroker. The plaintiff, a licensed precious metal and gem dealership, in connection with the purchase of precious metal and gems, sometimes would sell to the customer from whom a purchase was made an option to repurchase the goods within thirty days at a price between eight and eleven percent higher than the purchase price paid by the plaintiff. The option itself would cost between eight and eleven percent of the purchase price, and additional thirty-day options, at the same cost for each option, could be purchased so as to extend the right to repurchase for up to six months. The court, Lido V. Bucci, J., granted summary disposition for the defendant, finding that the granting to a customer of an option to repurchase the goods at a stipulated price brought the plaintiff within the definition of a pawnbroker as used in the pawnbroker ordinance of the City of Warren and that, accordingly, the plaintiff was subject to regulation as a pawnbroker. The plaintiff appealed.

The Court of Appeals *held:*

The statute upon which the Warren ordinance is based, MCL 446.203; MSA 19.583, evidences a legislative intent that a transaction in which goods are purchased on the condition that they may be repurchased at a stipulated price constitutes the act of pawnbroking and is subject to regulation as pawnbroking. It is the nature of the transaction, not the label or form, that renders the transaction subject to regulation as pawnbroking.

Affirmed.

REFERENCES

Am Jur 2d, Moneylenders and Pawnbrokers § 1.
See ALR Index under Pawnbrokers.

CORRIGAN, P.J., dissenting, stated that *People v Lee,* 447 Mich 552 (1994), while involving the question whether this type of transaction is a loan for the purpose of a criminal prosecution for usury, controls the disposition of this case. The rationale for the result reached by the majority that these transactions constitute pawnbroking turns on the conclusion that the effect of the purchase and repurchase, in fact, results in a loan, a conclusion that is precluded by the holding in *Lee.* The trial court's grant of summary disposition for the defendant should be reversed.

SALES — PAWNBROKING — OPTION TO REPURCHASE.

A sale of goods involving an option to repurchase at a stated price constitutes pawnbroking where a statute or ordinance defines a pawnbroker as any person who deals in the purchase of personal property or other valuable thing on condition of selling the item back at a stipulated price (MCL 446.203; MSA 19.283; Warren Code, art IV, § 30-47).

*Honigman Miller Schwartz & Cohn* (by *Lee W. Brooks* and *Michael A. Gruskin*), for the plaintiff.

*Robert J. Chrzanowski,* City Attorney, and *Nancy Cooper Green,* Assistant City Attorney, for the defendant.

Before: CORRIGAN, P.J., and O'CONNELL and G. S. ALLEN,* JJ.

O'CONNELL, J. In this declaratory judgment action, plaintiff, Folands Jewelry Brokers, Inc., appeals as of right the grant of summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) for defendant, City of Warren. We affirm.

Folands operates a licensed precious metal and gem dealership at 4100 Fourteen Mile Road in Warren, Michigan. As a dealer, Folands buys and sells precious metals and gems. Most of the precious metals and gems Folands purchases are sold

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

to the general public. However, customers some-
times repurchase gems or metals at a substantially
higher price, pursuant to a repurchase option
offered by Folands.

The Warren city attorney issued an opinion
stating that Folands' jewelry business constituted
pawnbroking and was, therefore, subject to regula-
tion under the city's pawnbroker ordinance. Fo-
lands filed suit, seeking a declaratory judgment
that it was not a pawnbroker. In a well-reasoned
opinion, the circuit court concluded that Folands
was subject to regulation as a pawnbroker.

The sole issue on appeal is whether Folands falls
within the statutory definition of a pawnbroker
and is, therefore, subject to regulation as a pawn-
broker. The Warren Code, art IV, § 30-47, which
follows closely the language of § 3 of Michigan's
pawnbroker act, MCL 446.203; MSA 19.583, pro-
vides as follows:

Any person who loans money on deposit or
pledge of personal property or other valuable
thing, other than securities or printed evidence of
indebtedness, or who deals in the purchasing of
personal property or other valuable thing on con-
dition of selling the same back again at a stipu-
lated price, is hereby defined to be a pawnbroker.

As noted, Folands purchases precious metals or
gems from customers. At the time of sale, it grants
the customer the right to repurchase the item at
the full purchase price within fifteen days. How-
ever, Folands also extends a second type of repur-
chase option to certain customers. Within one
week after the sale, select customers may buy a
thirty-day option to repurchase their precious
metal or gem at an eight to eleven percent pre-
mium over the original purchase price. The option
itself also costs between eight and eleven percent

of the original purchase price of the item. Further, the option may be renewed at the same cost, that is, eight to eleven percent, every thirty days for up to six months. In effect, Folands receives an annualized rate of return of between 96 and 132 percent, plus the eight to eleven percent premium charged.[1]

The city contends that both types of repurchase options constitute pawnbroking because both involve the sale of property "on condition of selling the same back again at a stipulated price." Warren Code, art IV, § 30-47 and MCL 446.203; MSA 19.583. We agree.

When interpreting a statute, our goal is to ascertain and effectuate the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). We look first to the specific language of the statute, *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993), resorting to judicial construction only where reasonable minds could disagree with regard to the statute's meaning. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Additionally, when considering an ordinance, we apply the same rules of construction as when considering a statute. *Albright v Portage,* 188 Mich App 342, 350, n 7; 470 NW2d 657 (1991). Finally, our review of the lower court's construction is de novo. *Madison v Detroit,* 208 Mich App 356, 358; 527 NW2d 71 (1995).

Turning to the statute and ordinance in issue, we find no express legislative recognition of repurchase transactions such as those conducted by Folands. We are also unaware of any Michigan precedent addressing the question whether these

---

[1] By labeling this transaction a "sale" rather than a "pawn," our Supreme Court in *People v Lee,* 447 Mich 552; 526 NW2d 882 (1994), has stated that this chicanery is not usurious.

transactions constitute pawnbroking. However, while this question may be new to Michigan, it has been addressed by the Supreme Court of Connecticut.

In *Rhodes v City of Hartford,* 201 Conn 89; 513 A2d 124 (1986), the Supreme Court of Connecticut was faced with a factual situation remarkably similar to that at hand, and traced the history of "repurchase transactions" to 1911, when they were vilified as "[t]he greatest evil of the small money lending business." *Id.,* p 97, quoting S. Levine, A Treatise on the Law of Pawnbroking (1911), pp 115-116. That Court concluded as follows:

> [T]he legislature indicated that it intended the statutes to regulate not only those transactions that take the classic form of a conventional pawnbroking loan, but also financing arrangements that, *in substance if not in form,* amount to any economic equivalents of such a loan. *Accordingly, the statutes apply to any transaction, regardless of its label or form,* in which a pawnbroker gives a customer money and, in return, receives the right to hold the customer's property and the right to demand payment from the customer for the use of the money before allowing the customer to reclaim his property. (*Id.,* p 96. Emphasis added.)

We conclude that the broad language used by our Legislature in MCL 446.203; MSA 19.583 evinces a similar intent to include activities such as those of Folands within the definition of pawnbroking.

Therefore, regardless of the legerdemain of denominating the transaction in issue a sale rather than pawnbroking, such transactions legally constitute pawnbroking.[2] Accordingly, those engaging

---

[2] As noted by the trial court in *Rhodes, supra,* p 92, "[o]ne should not be able to avoid a tax on shoes by calling shoes slippers."

in such transactions must possess pawnbrokers' licenses and may charge an effective interest rate not in excess of thirty-six percent a year, the maximum allowed by law for pawnbrokers. MCL 446.210; MSA 19.590.

We would note in passing that our Supreme Court's recent decision in *People v Lee,* 447 Mich 552; 526 NW2d 882 (1994), does not control the matter presently before this Court. In *Lee,* the Supreme Court decided that transactions such as the ones in issue may not be considered loans, and, accordingly, may not be prosecuted as usurious.[3] We conclude only that these transactions constitute pawnbroking and must be regulated as such. To extend the reasoning of *Lee* to the present situation would serve only to sound the death knell of pawnbroking and the concomitant compliance with the Pawnbroker Act,[4] a result obviously at odds with the intent of our Legislature.

G. S. ALLEN, J., concurred.

CORRIGAN, P.J. *(dissenting).* I dissent from the majority opinion because I reluctantly must conclude that our Supreme Court's recent decision in *People v Lee,* 447 Mich 552; 526 NW2d 882 (1994), controls the outcome of this case. I believe the majority's limitation on the application of *Lee* to criminal usury cases construes *Lee* too narrowly.

In *Lee,* the complainant, Lonnie May, approached the defendants, Jeffrey Lee and David Miller, for a loan. As security for the loan, May

---

[3] We would limit the application of *Lee, supra,* to criminal cases involving the charge of usury.

[4] Which is to say, what individual would become a pawnbroker, thereby becoming subject to the Byzantine regulation pawnbroking entails, when one could simply engage in the type of transactions conducted by Lee and Folands, and thereby operate essentially unregulated with the freedom to, in effect, exact usurious rates of interest?

offered his Rolex watch. The defendants did not want to loan May money,[1] but offered to buy the watch for $2,600 and then resell it to him in thirty days for $3,250. Believing the watch to be worth five or six thousand dollars, May agreed to the "sale" and option to repurchase the watch. May was under no obligation to repurchase the watch. At the end of the thirty-day period, May could not tender the $3,250. The defendants offered May a second option for $625 to extend his right to repurchase the watch for another thirty days.

The circuit court found that the underlying transaction amounted to either a loan or a pawn and that it was usurious. This Court summarily affirmed the judgment of the circuit court in *People v Lee,* unpublished memorandum opinion of the Court of Appeals, decided April 22, 1993 (Docket Nos. 149014 and 149015). In rejecting the circuit court's ruling, the Supreme Court held that no loan existed because May was under no obligation to repurchase the watch.[2] *Id.* Thus, no probable cause existed to support a violation of the usury statute, MCL 438.41; MSA 19.15(51). *Lee, supra* at 564.

The majority opinion distinguishes *Lee* on the basis that it involved a criminal prosecution for usury. I cannot agree. I believe that the definition of a loan announced in *Lee* governs this case. The majority, relying on the Supreme Court of Connecticut's reasoning in *Rhodes v City of Hartford,* 201 Conn 89; 513 A2d 124 (1986), opines that Folands' business falls within Michigan's pawnbroking statute, MCL 446.203; MSA 19.583, whether or not repurchase agreements constitute loans. However, in determining that the plaintiff's

---

[1] May testified that Lee wanted to avoid the legal ramifications of operating as a pawnbroker.

[2] Chief Justice CAVANAGH dissented and was joined by Justices BOYLE and GRIFFIN.

business amounted to pawnbroking, *Rhodes* held that repurchase transactions, in substance if not in form, are *loans. Rhodes, supra* at 96. Consequently, a determination whether Folands' business falls within Michigan's definition of pawnbroking necessarily turns on whether repurchase agreements are loans. Accordingly, I conclude that *Lee* controls our disposition of this case.

Applying *Lee,* I would hold that Folands' business does not constitute pawnbroking because Folands' customers are not obligated to repurchase the precious metals or gems pursuant to either repurchase option available.

I also believe that *Lee* construed these loan transactions too narrowly. Customers who "sell" their valuables at a price substantially less than they are worth with an option to repurchase the same for a substantially higher price are actually pledging their property as security for a loan, i.e. pawnbroking.[3] Although no obligation technically exists under the repurchase option, the customer who sells property for less than it is worth must repurchase the item or forgo the property at a significant loss. The "option" is in reality no option at all; the customers are virtually forced to repurchase by the inequities inherent in the transaction. Indeed, Folands applied for a pawnbroker license in 1992, but had not obtained it at the time of this litigation. Thus, Folands could not legally pawn precious metals or gems or loan money. Instead, it utilized the repurchase option to subvert the pawnbroker statute. Nevertheless, because of *Lee,* I am compelled to conclude that Folands is not a pawnbroker.

I would reverse.

---

[3] See *Caudle v City of Fayetteville,* 315 Ark 276; 866 SW2d 410 (1993); *Rhodes v City of Hartford,* 201 Conn 89; 513 A2d 124 (1986); *City of Wanatchee v Johnston,* 68 Wash App 697; 846 P2d 547 (1993).