TELEPHONE ASSOCIATION OF MICHIGAN v PUBLIC SERVICE
COMMISSION

Docket No. 163407. Submitted January 11, 1995, at Lansing. Decided
May 19, 1995, at 9:20 A.M.

    The Public Service Commission issued notice of opportunity by
interested parties to file comments concerning a proposal that
would require providers of telecommunication services to file
151 items of data with respect to each NNX group for the
purpose of monitoring the level of telecommunication sub-
scriber connection within each exchange as required by MCL
484.2202; MSA 22.1469(202). The Telephone Association of
Michigan, an association of thirty-seven telephone companies
providing basic local exchange service, argued that the informa-
tion sought was not relevant to the PSC's duty to monitor under
§ 202, that the proposed semiannual reporting was burdensome,
and that twenty-nine items of data reported on an exchange
basis would satisfy the statutory mandate. The PSC's December
22, 1992, order changed the reporting to an annual basis and
created a means by which a company could seek an exception
from the collecting of particular items of data if those items of
data were not compiled already for some other purpose, but
continued to require that the reporting be on the basis of NNX
groups rather than on the basis of exchanges. Following the
PSC's denial of its petition for rehearing, the association ap-
pealed.

    The Court of Appeals *held:*

    1. Because it is claimed that the members of the Telephone
Association of Michigan would be burdened in a manner differ-
ent from the general public by the reporting requirements
adopted by the PSC, the association has standing to contest the
PSC's orders.

    2. Although the report to the Legislature for which the
monitoring data originally was sought already has been submit-
ted to the Legislature, there is nothing in § 202 that precludes
the PSC from continuing to require the reporting of that data.
Accordingly, the question of the extent of the PSC's power to
require the submission of that data is not moot.

    3. The Legislature, by failing to define specifically the phrase
"telecommunications subscriber connection" as used in § 202,

left to the PSC the power to define the phrase in the exercise of its legislative or policymaking power. The PSC's exercise of that power is entitled to the greatest deference by the Court of Appeals. The PSC reasonably could define that phrase to include both regulated and unregulated telecommunication services and did not abuse its authority by refusing to define that phrase to include only basic residential and business loop connections.

Affirmed.

*Timothy A. Hoffman* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting, P.C.* (by *William D. Parsley, Harvey J. Messing,* and *Gary L. Field*), for the Telephone Association of Michigan.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Sharon L. Feldman,* Assistant Attorneys General, for the Public Service Commission.

Before: McDONALD, P.J., and TAYLOR and HOEKS-TRA, JJ.

PER CURIAM. The Telephone Association of Michigan (TAM) appeals as of right the December 22, 1992, and March 31, 1993, orders of the Public Service Commission, requiring the TAM's members to report certain disputed information annually.

I

The Michigan Telecommunications Act, 1991 PA 179, MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.*, repealed and replaced public acts of 1883 and 1913 regulating telephone service. The present act replaces regulation of entities with regulation of telecommunication services. According to a conference committee report on the Senate bill, which eventually became the act, this was done in an effort to provide an environment of structured

competition for the provision of telecommunication services.

Section 201 of the act, MCL 484.2201; MSA 22.1469(201), provides:

> (1) The Michigan public service commission shall have the jurisdiction and authority to administer this act.
> (2) In administering this act, the commission shall be limited to the powers and duties prescribed by this act.

Section 202, MCL 484.2202; MSA 22.1469(202), provides in part:

> In addition to the other powers and duties prescribed by this act, the commission shall do all of the following:
> (a) Establish a program to monitor the level of telecommunications subscriber connection within each exchange in the state, and report to the legislature the results of its monitoring and any actions it has taken or recommends be taken to maintain and increase subscriber connections. The report made pursuant to this subdivision shall be included in the commission's report required under subdivision (f).

Subdivision f, MCL 484.2202(f); MSA 22.1469(202) (f), requires the PSC to issue a report to the Legislature and Governor on or before January 1, 1994, recommending legislation, providing information regarding the data it has collected, and otherwise advising the Legislature and Governor regarding certain enumerated aspects of the telecommunication industry.

On September 11, 1992, the PSC issued an order and notice of opportunity to comment, requesting interested parties to file comments to a proposal of the PSC staff that would require providers of tele-

communication services to file with the PSC some 151 items of data. The staff proposed that providers be required to compile and report the requested information twice a year in both electronic and paper form for each "NNX group," which includes all local telephone numbers having the same first three digits.

On October 2, 1992, the TAM filed comments to the staff's proposed requirements. The TAM is an association of thirty-seven telephone companies providing basic local exchange service in Michigan. The TAM objected to most of the 151 separate data requests in the proposed survey. The TAM argued that the information sought was not relevant to the PSC's duty under § 202(a) "to monitor the level of telecommunications subscriber connection within each exchange." The TAM contended that the proposed reporting requirement unreasonably mandated the filing of data concerning virtually every aspect of the telecommunication services that the TAM members provided, that the proposed report was burdensome to produce, and that it went beyond the statutory mandate by requiring data to be compiled by NNX group and not within each exchange. The TAM noted that its largest member, Michigan Bell, has 1007 NNX groups. If Michigan Bell were required to supply 151 items of data for each of these groups, it would be required to answer 16,157 individual data requests every six months under the staff's proposal. The TAM suggested in the alternative that its members would voluntarily file on an annual basis twenty-nine items of data on an exchange basis, as opposed to an NNX group basis. The TAM argued that the term "subscriber connection" is commonly used in the industry to describe basic residential and business loop connections. The TAM argued that the statute should be interpreted in conform-

ity with this usage and that reporting require-
ments be limited to information relevant to the
number of individuals, and perhaps businesses,
who have access to basic local exchange service.

On December 22, 1992, the PSC issued its order
establishing the monitoring program required by
the statute. Although the PSC agreed with the TAM
that annual reports would be sufficient, the PSC
agreed with its staff that the statute authorizes
the collection of data on a variety of telecommuni-
cation services and issues, and that the PSC is not
limited to monitoring the level of individual access
to basic local service. The PSC found that much of
the information described by the TAM as being
burdensome and unnecessary already was com-
piled by the TAM members for purposes of billing
customers or to satisfy other reporting require-
ments, such as those imposed by the Federal Com-
munications Commission. However, to the extent
that a company did not collect or use the re-
quested information for any other purpose, the PSC
created a procedure by which a company can
claim exemption from the reporting requirement.
The PSC cautioned that if the requested data is
collected or used by the company for any purpose,
it must be reported. The PSC held that data should
be reported if available on an NNX group basis
because exchange data may be too broad and
distort the actual availability of various services or
features.

The TAM filed a petition for rehearing, which
was denied on March 31, 1993. The PSC rejected
the TAM's argument that the monitoring survey
was unduly burdensome, and also rejected the
TAM's arguments regarding the scope of the PSC's
authority under § 202(a) as follows:

The Commission finds that TAM's petition for

rehearing should be rejected. Contrary to TAM's allegations, Section 202(a) provides ample authority for the Commission to institute a broad monitoring program that reviews all aspects of telecommunications subscriber connection in the state. In passing Act 179, the Legislature was careful to distinguish between regulated and unregulated telecommunications services. . . . [MCL 484.2102(t); MSA 22.1469(102)(t).] While the Legislature did not specifically define "telecommunications subscriber connection" in Section 202(a), nothing in that section restricts the monitoring program to regulated telecommunications services. Indeed, because the Legislature restricted the Commission's authority in Sections 202(b), 202(c) and 202(d) [MCL 484.2202(b), (c), (d); MSA 22.1469(202)(b), (c), (d)] to matters related to regulated telecommunications services, it is entirely reasonable to conclude that the Legislature specifically decided not to limit the Commission's monitoring program to regulated telecommunications services. As further support, the Commission notes that the report required by Section 202(a) is to be included in the Commission's 1994 report to the Legislature required by Section 202(f), which covers a multitude of issues involving both regulated and unregulated telecommunications services.

Regarding TAM's argument that Section 202(a) precludes the Commission from seeking responses to data requests on an NNX basis, the Commission observes that the monitoring program should examine the level of telecommunications subscriber connection "within" each exchange in the state. By using the word "within" in Section 202(a), the Commission finds that the Legislature did not preclude a monitoring program that requires providers to report data on an NNX basis. Rather, the Legislature directed the Commission to carefully examine the level of telecommunications subscriber connection "within" each exchange, not to simply accumulate and report data on an exchange by exchange basis as TAM insists. Moreover, the Commission remains convinced that data

accumulated on an exchange basis may be too broad and may misrepresent the status of infrastructure investment in some areas of the state.

II

The PSC argues that there is no need for this Court to reach the merits, because the TAM does not have standing to bring this appeal. The PSC contends that the TAM itself has not been affected adversely by any of its decisions and notes that no individual telecommunication provider has filed an appeal. We disagree. If the TAM's claims of error are correct, then its members have been burdened or harmed in a manner different from the citizenry at large and the TAM should therefore have standing to contest the PSC's .orders. *Speaker v State Administrative Bd,* 441 Mich 547, 554; 495 NW2d 539 (1993).

The TAM contends that we need not reach the merits, because we should hold that the monitoring required by § 202(a) is tied to the report the PSC was required to submit pursuant to § 202(f). Because the TAM members supplied the data necessary for the PSC to finish that report, which has already been presented to the Legislature and Governor, questions regarding data before January 1, 1994, are moot. If the PSC has no authority to demand future data now that the report has been submitted, then there is no need for this Court to proceed further. However, the TAM has pointed to nothing in the text of § 202(a) or legislative history indicating that the monitoring program is limited to the gathering of data necessary to create and submit the report required by § 202(f). The TAM's members therefore remain obligated to supply the data demanded by the PSC for 1994 and 1995 and

perhaps beyond, if the act's self-contained repeal of January 1, 1996, is itself repealed.

The TAM contends that the PSC's interpretation of the reporting requirement is nothing more than a self-serving expansion of its regulatory powers contrary to the legislative intent to reduce the PSC's regulatory powers. In particular, TAM argues that pursuant to § 202(a) the PSC is required to establish a program to monitor the level of "tele-communications subscriber connection" and that this phrase has a well-defined meaning in the telecommunication industry. The TAM represents that "subscriber" is understood to mean a purchaser or contractor of telecommunication services, and "connection" is understood to mean access to the local exchange network, from which the subscriber can obtain access to other telecommunication services. The TAM contends that the PSC's expansive understanding of its monitoring authority effectively replaces the phrase "telecommunication subscriber connection" in § 202(a) with "telecommunications services." The TAM argues that this is error, inasmuch as the act explicitly defines "telecommunication services" in § 102(t), but does not define "telecommunications subscriber connection." The TAM contends that this phrase is not defined because the Legislature understood it to be a term of art in the telecommunication industry.

The PSC responds that the terms "subscriber" and "connection" do not have the unambiguous technical meanings that the TAM contends they have. The PSC argues that "subscriber connection" could not possibly be limited to access to the local exchange, inasmuch as § 102(b); MCL 484.2102(b); MSA 22.1469(102)(b), explicitly defines the phrase "basic local exchange service." If the Legislature meant the monitoring program to be limited as

the TAM suggests, then the Legislature presumably would have directed the PSC to monitor access to the "basic local exchange." Instead, the Legislature directed the PSC to monitor the level of subscriber connection with various telecommunication services, and left it to the PSC to determine just which connections or services should be monitored.

In resolving this controversy, we are guided by the standard of review applicable to PSC decisions. The PSC is a creature of statute and possesses no common-law powers. A statute that grants power to an administrative agency is to be construed strictly. Administrative authority must be granted affirmatively or plainly, for doubtful power does not exist. *Consumers Power Co v Public Service Comm,* 189 Mich App 151, 176; 472 NW2d 77 (1991). However, a party dissatisfied with a PSC order has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. The party must show that the order was arbitrary, capricious, an abuse of discretion, or not supported by the record. *Michigan Intra-State Motor Tariff Bureau v Public Service Comm,* 200 Mich App 381, 387-388; 504 NW2d 677 (1993).

Great deference is due the construction of a statute by the agency legislatively chosen to enforce it, which ought not to be overruled without cogent reasons. *Breuhan v Plymouth-Canton Community Schools,* 425 Mich 278, 282-283; 389 NW2d 85 (1986). Contrary to the TAM's assertions, this principle applies to interpretations involving the scope of the agency's power. *Mississippi Power & Light v Mississippi ex rel Moore,* 487 US 354, 381; 108 S Ct 2428; 101 L Ed 2d 322 (1988). Although deference generally is given only to longstanding interpretations, not at issue here, due regard must be given the legislative intent to repose in an administrative agency authority to enforce a stat-

ute. *In re Quality of Service Standards for Regulated Telecommunication Services,* 204 Mich App 607, 612-613; 516 NW2d 142 (1994).

The TAM contends that "telecommunications subscriber connection" cannot be understood being as broad as the PSC would like, because such a broad interpretation essentially converts the phrase into "telecommunication services," which the Legislature explicitly defined and which the Legislature could have used had it chosen to do so. The PSC counters that "telecommunications subscriber connection" cannot be as limited as the TAM would like, because it would then be equivalent to basic local exchange service, which is explicitly defined in the act but was not used by the Legislature in § 202(a). We hold that both parties are right and both parties are wrong. If the Legislature had used either of the defined phrases, then the meaning of § 202(a) would be clear. However, the fact that the Legislature did not use one of the defined phrases does not mean that the phrase it did use, "telecommunications subscriber connection," cannot be understood as being as broad as telecommunication services or as narrow as basic local exchange service. By failing to define the term specifically, the Legislature left it to the PSC to fill in this legislative gap. When the PSC is engaged in such a legislative or policymaking action, it is entitled to the greatest deference from this Court. *Michigan Intra-State Motor, supra* at 388.

The TAM contends that the PSC's decisions in this case are internally inconsistent and are also inconsistent with one or more decisions reached in other cases. In its March 31, 1993, order in this case, the PSC noted that subsections b, c and d of § 502 explicitly restrict the PSC's authority to regulate telecommunication services, whereas subsection a

does not. The PSC reasoned that the Legislature must have intended that subsection a be applied to all telecommunication services, both regulated and unregulated. The TAM argues that this is inconsistent with a PSC order in another case in which it held that although § 202(b) by its terms allows the PSC to set rules and regulations for the keeping of accounts and books by providers of regulated services, the statute does not prevent the PSC from setting rules and regulations for the keeping of accounts and books regarding unregulated activities by providers of regulated services. The TAM contends that these inconsistent results demonstrate the arbitrary and capricious nature of the PSC's interpretation of the statute. In addition, in its December 22, 1992, order in this case, the PSC held that it does not have jurisdiction to require reports from providers of only unregulated services. Nevertheless, in its March 31, 1993, order denying rehearing, the PSC held that nothing in § 202(a) restricts the monitoring program to regulated services only. Once again, the TAM contends that these decisions are indicative of a lawless PSC.

The TAM's arguments are not persuasive. There is nothing inconsistent in the PSC's holding in this case that § 202(a) covers both regulated and unregulated services and its holding in another case that even though § 202(b) applies only to providers of regulated services, it applies to all services of such providers, whether regulated or unregulated. Similarly, there is nothing inconsistent in the PSC holding in its December 22, 1992, decision in this case that it has no jurisdiction to require reports from providers that render no regulated services and holding in its decision on rehearing that it may require reports from providers of regulated services that cover both regu-

lated and unregulated services. In each case, the PSC merely has held that the provision of a regulated service brings the provider under the PSC's jurisdiction. Once the provider is under its jurisdiction, the PSC may monitor or otherwise affect both regulated and unregulated services.

Because the TAM has failed to prove by clear and satisfactory evidence that the PSC's decisions in this case are unlawful or unreasonable, we affirm.