ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket No. 190659. Submitted December 4, 1996, at Lansing. Decided December 20, 1996, at 9:30 A.M.

The Detroit Edison Company filed an application for ex parte approval by the Public Service Commission of a long-term purchase of electric capacity from Ontario Hydro. The application included information alleging that the purchase was part of a combined transaction whereby Detroit Edison leased some of its excess capacity to the Toledo Edison Company. The arrangement allegedly would result in a net savings for Detroit Edison's customers of about $74 million during the six years of the arrangement. Detroit Edison also committed itself not to pass through to its customers any unanticipated costs associated with the combined transaction. The Attorney General and several other parties filed requests for a hearing. The PSC entered an order approving the purchase from Ontario Hydro and denying the requests for a hearing. The Attorney General appealed from the order of the PSC.

The Court of Appeals *held*:

1. The "prior approval" of the PSC for a purchase of power for a period exceeding six months authorized by MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b) may be given by the PSC without a hearing or a contested case proceeding.

2. A hearing is not required in this case under MCL 460.6a(1); MSA 22.13(6a)(1) because that statute deals with general rate cases and requires notice and a hearing whenever a utility increases its rates or alters rates where the effect will be to increase the cost of service to its customers. Here, the effect of the contract, and its approval by the PSC, is not to raise rates.

3. The Attorney General did not show by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable.

Affirmed.

PUBLIC UTILITIES — PURCHASE OF POWER — PUBLIC SERVICE COMMISSION — PRIOR APPROVAL.

The prior approval of the Public Service Commission for a purchase of power for a period exceeding six months by a public utility authorized by MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b) may be

given by the commission without a hearing or a contested case proceeding.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *J. Peter Lark* and *Donald E. Erickson,* Assistant Attorneys General, for the Attorney General.

*Don L. Keskey* and *Henry J. Boynton,* Assistant Attorneys General, for the Public Service Commission.

*Bruce R. Maters* and *Raymond O. Sturdy, Jr.,* for the Detroit Edison Company.

Before: YOUNG, P.J., and O'CONNELL and W. J. NYKAMP,* JJ.

O'CONNELL, J. The issue before this Court is whether the Michigan Public Service Commission (PSC) can "approve" a long-term purchase of electric capacity from Ontario Hydro without conducting a contested case proceeding under MCL 460.6j; MSA 22.13(6j) or MCL 460.6a; MSA 22.13(6a). We conclude that the PSC could so proceed in this case, and we affirm the PSC's October 25, 1995, order in Public Service Commission Case No. U-10939 authorizing Detroit Edison to recover from its customers the costs associated with its purchase of the capacity from Ontario Hydro.

Detroit Edison has an ownership interest in a hydroelectric plant known as the Ludington Pumped Storage Hydroelectric Plant. Detroit Edison considered the Ludington facility to be underutilized. In April 1995, Detroit Edison contracted with the Toledo Edison Company to lease about one-third of the Lud-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ington capacity to Toledo Edison for six years, from June 1, 1996, through May 31, 2002. About 312 megawatts were leased with estimated lease payments to Detroit Edison over the term of the lease amounting to about $94 million. This arrangement did not require PSC approval.

In August 1995, Detroit Edison executed a contract with Ontario Hydro to purchase about three hundred megawatts of electric capacity from Ontario Hydro on a seasonal basis from mid-May through mid-September for the years 1996 through 2001. Detroit Edison believed it needed the capacity in order to satisfy peak demand during the summer months. Taking into account escalator clauses, Detroit Edison estimated that over the term of the lease its maximum charge would be about $20 million. Detroit Edison's arrangement with Ontario Hydro required PSC approval because it involved the recovery of the cost of power purchased from Ontario Hydro for a period in excess of six months. MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b).

In September 1995, Detroit Edison filed an application with the PSC for approval of its purchase from Ontario Hydro. Detroit Edison asserted that the "swap" involving Toledo Edison and Ontario Hydro would save Detroit Edison and its customers about $74 million over the six years of the arrangement. Detroit Edison submitted copies of its contracts with both Toledo Edison and Ontario Hydro to the PSC. Detroit Edison claimed that the price it was paying Ontario Hydro was quite favorable (pointing out that the cost matched Detroit Edison's lowest cost for purchases during the summers of 1994 and 1995) and that the Ontario Hydro capacity was not limited and

was highly reliable. Detroit Edison further asserted that its "combined transaction" would not result in any increase in the rates of its customers and that Detroit Edison "committed" itself not to pass through to its customers any unanticipated costs associated with the combined transaction.

Several parties, including the Attorney General, filed requests for a hearing. In its October 25, 1995, decision, the PSC approved Detroit Edison's purchase from Ontario Hydro and denied the requests for a hearing. The PSC found that the net effect of Detroit Edison's arrangement was to reduce costs. The PSC reasoned that the purchase of capacity from Ontario Hydro was merely a substitute for the leased Ludington capacity, that MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b) permitted approval by means other than a contested case proceeding, and that a hearing was not required under MCL 460.6a; MSA 22.13(6a), because the purchase from Ontario Hydro would not increase the cost of service to customers.

MCL 460.6j(13)(b); MSA 22.13(6j)(13)(b) requires the PSC to disallow capacity charges associated with purchased power for periods in excess of six months unless the utility has obtained the "prior approval" of the PSC. Subsection 6j(13) is part of a complex statute (1982 PA 304) seeking to protect utility customers from rate increases due to upward adjustments in the cost of power. The statute requires utilities to file an annual "power supply cost recovery plan" and provides for annual power supply cost recovery reconciliation hearings that are contested cases, following which the PSC determines the extent to which a utility may recover its power supply costs. MCL 460.6j(12); MSA 22.13(6j)(12).

At issue in the instant case is whether the "prior approval" authorized by subsection 6j(13)(b) can be given by the PSC without a hearing. In this case, the PSC had before it only the filing of Detroit Edison and the pleadings in opposition filed by the Attorney General and other parties.

The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature. *Drouillard v Stroh Brewery Co*, 449 Mich 293, 302; 536 NW2d 530 (1995). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. *In re Estes Estate*, 207 Mich App 194, 208; 523 NW2d 863 (1994). In this case we also give some deference to the construction of the statute by the agency that enforces it. *Telephone Ass'n of Michigan v Public Service Comm*, 210 Mich App 662, 670-671; 534 NW2d 223 (1995).

Here, subsection 6j(13) on its face does not require a hearing or a contested case proceeding; it requires merely "prior approval" of the PSC. In contrast, the Legislature clearly provided for formal contested case proceedings at least once a year for reconciliation purposes elsewhere in § 6j. MCL 460.6j(12); MSA 22.13(6j)(12). Thus, the Legislature was capable of requiring a hearing when it thought one necessary. There is no persuasive indication that the Legislature thought a hearing was necessary in every instance where the PSC gives prior approval under subsection 6j(13)(b).

This reading of subsection 6j(13) is reasonable. The Legislature elsewhere provided for contested cases as part of the annual review process for power supply cost recovery. Thus, within a relatively short time after the PSC grants "prior approval," parties are able

to bring forward whatever evidence the PSC might not have initially considered and the PSC will have an opportunity to further reflect on the reasonableness and prudence of the utility's purchased power costs. The Legislature's scheme permits a utility to react to changing business circumstances without becoming bogged down in regulatory proceedings while at the same time the scheme protects customers.

Indeed, it would seem unreasonable to require a contested case proceeding for every purchase of power for a period exceeding six months when within a year the purchase can be considered in a contested case proceeding. The Legislature did not prevent the PSC from conducting a contested case proceeding or from considering in the first instance a purchased power contract in a power supply cost recovery proceeding. Rather, the Legislature gave the PSC discretion in dealing with requests for approval, with the understanding that any party could dispute the reasonableness and prudence of the purchase at least in a power supply cost recovery case and perhaps in a general rate case. The Attorney General's construction would add an unnecessary degree of expense and time-consuming oversight in many, if not most, cases.

The Attorney General also argues that a hearing was required under MCL 460.6a(1); MSA 22.13(6a)(1). That statute deals with general rate cases. It requires notice and a hearing whenever a utility increases its rates or alters rates, "the effect of which will be to increase the cost of service to its customers . . . ." Subsection 6a(1) provides:

> When a finding or order is sought by a gas or electric util-
> ity to *increase* its rates and charges or to alter, change, or

amend any rate or rate schedules, the effect of which will be to *increase the cost of services* to its customers, notice shall be given within the service area to be affected. The utility shall place in evidence facts relied upon to support the utility's petition or application to increase its rates and charges, or to alter, change, or amend any rate or rate schedules. After first having given notice to the interested parties within the service area to be affected and affording interested parties a reasonable opportunity for a full and complete hearing, the commission, after submission of all proofs by any interested party, may in its discretion and upon written motion by the utility make a finding and enter an order granting partial and immediate relief. A finding or order shall not be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report. An alteration or amendment in rates or rate schedules applied for by a public *utility that will not result in an increase in the cost of service to its customers may be authorized and approved without notice or hearing.* There shall be no *increase* in rates based upon changes in cost of fuel or purchased gas unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of fuel or purchased gas. The rates charged by any utility pursuant to an automatic fuel or purchased gas adjustment clause shall not be altered, changed, or amended unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of the fuel or purchased gas. [Emphasis added.]

This statute does not apply here because the effect of Detroit Edison's contract, and its approval by the PSC, is not to raise rates. In fact, the "swap" arrangement seems likely to result in a net savings of $74 million. In addition, Detroit Edison committed itself to absorbing unanticipated costs associated with either the Ontario Hydro purchase or the Toledo Edison lease. The evidence available to the PSC and to

this Court indicates there will be no increase in rates from the "swap" arranged by Detroit Edison.

While it is true Detroit Edison will purchase power from Ontario Hydro that Detroit Edison did not purchase before, there will not be an increase in the cost of services to customers because of the advantage obtained from the overall transaction. It does not follow that the PSC could not consider the lease with Toledo Edison just because the lease with Toledo Edison was beyond the regulatory authority of the PSC. The lease is part of the undeniable reality in which rates are set. The PSC's view that the leased Ludington capacity was "substituted" for the purchased Ontario Hydro capacity is a fair characterization of what Detroit Edison has done.

Appellant has not shown by clear and satisfactory evidence that the PSC's order appealed from is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8); *Attorney General v Public Service Comm*, 206 Mich App 290, 294; 520 NW2d 636 (1994).

Affirmed.